

FILED

02 JAN 14  AM 10: 47

CLERK, U.S.
MIDDLE DIST. OF FLORIDA
ORLANDO, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

BOOKER PERRY, JAMES JACKSON,
STACY MCLEAN, TERRY HAWKINS,
ROBSON SUAREZ and JUAN BAQUERO,

      **Plaintiffs,**

                                  Case No. 6:01-CV-208-ORL-22KRS

vs.

ORANGE COUNTY, FLORIDA and ORANGE
COUNTY PROFESSIONAL FIRE FIGHTERS,
LOCAL 2057, INTERNATIONAL ASSOCIATION
OF FIRE FIGHTERS,

      **Defendants.**

_____/

## LOCAL 2057's AMENDED MOTION TO COMPEL

      Defendant, Orange County Professional Fire Fighters, Local 2057, I.A.F.F., by and

through undersigned counsel, and moves to compel discovery, and would show the following:

      1. Plaintiffs' responses to Local 2057's discovery initiatives were evasive and

incomplete. Further, plaintiffs' initial disclosure of documents pursuant to Fed.R.C.P.

26(a)(1)(B) was deficient. Defendant's initiatives and plaintiffs' answers or objections are set

forth below, together with plaintiffs' 26(a)(1)(B) disclosures:

### *First Set of Interrogatories*

Interrogatory No.1:

      Concerning your contention that Local 2057 intentionally discriminated against the
plaintiffs, state in full detail and with particularity all facts that support your contention,
including, but not limited to: (The subparagraphs (a) to (e)) listed below are not limitations on
the answer. Instead, they are intended to obtain information that may be otherwise be overlooked

in responding to this interrogatory.)

<p style="text-align:center">Answer:</p>

It is our collective contention that Local 2057 engaged in acts of intentional discrimination against us by actions which included, but are not necessarily limited to, the participation in the creation of the flawed lieutenant's promotional examination which had an extreme statistical disparate impact upon minorities like ourselves. Local 2057's President, Mark Rhame (Rhame), served as a Subject Matter Expert (SME) and knew, or reasonably should have known, that the test would have an overwhelming discriminatory impact. However, Rhame knew that the test had resulted in the promotion of 59 White/Caucasian employees; and, with the Union (Local 2057) being overwhelmingly dominated by White/Caucasian members, as well as not having any minorities on its Executive Board, and a history of providing very little assistance to minority grievances, acquiesced in the flawed examination.

Equally, if not more revealing of Local 2057's intentional discrimination, was the actions of Rhame at Step II of the grievance filed collectively by us challenging the flawed examination. At the Step II hearing held before former Orange County Fire & Rescue Department Chief, Michael Iacona (Iacona) on or about January 24, 2000, Rhame was present, as well as several white firefighters who were allowed to sit in as observers, but with no business being at the proceeding, other than for intimidation. In contrast, a White/Caucasian fire fighter who concurred with the merits of our grievance, Tom Sawyer, was <u>not</u> permitted to attend the Step II hearing as an observer. The entire atmosphere was intimidating by virtue of Iacona (and, presumably, Rhame) allowing the non-minority firefighters to not only hear our grievance, but to actually comment at one point when the issue of test security was raised. During the hearing process itself, we were most amazed that our questions and the issues we posed in challenging the examination were answered by Rhame, rather than by Iacona. In other words, even though our questions were directed towards management (i.e. Iacona), they were voluntarily answered by Rhame in <u>defense</u> of the examination; clearly illustrating that Rhame had sided with the County and against us. A copy of the audiotape of the Step II hearing may be obtained from the County, as we did. In addition, a transcript of the Step II hearing may be acquired through Certified Realtime Reporting of Orlando, Inc., P.O. Box 3053, Orlando, Florida 32802, 407/359-9143.

Furthermore, during an intermission at the Step II proceeding, two of us (Plaintiffs Juan Baquero and James Jackson) had a conversation about asking Rhame for assistance; whereupon, Baquero approached Rhame since we were all amazed at Rhame's role in defending the examination and answering the questions posed to Iacona. When Baquero asked about the Union's role in pursuit of our grievance, Rhame stated, or words to the effect, that he had no advice for us, but that he definitely knew that the grievance would not be pursued to arbitration by Defendant Local 2057.

Once the comments were made by Rhame, it was clear that it was useless to further seek Local 2057's assistance due to the fact that Rhame had clearly taken a position in support of the validity of the lieutenant's examination against us. This is precisely why we felt no other alternative but to obtain private counsel for purposes of proceeding to Step III (GAB hearing). Even when we sought the Union's allowance or blessing to proceed to arbitration through private counsel, Rhame again refused. (*See* Exhibit F to the Verified Complaint.)

<p style="text-align:center">2</p>

Accordingly, and due to Rhame's defense of management at Step II, coupled with his remarks during intermission, it was clear that Local 2057 was following what we had perceived to be an historical pattern, practice and attitude towards minorities by Local 2057 in not pursuing matters to arbitration (despite the merits), when it was perceived to be adverse to the interests of Local 2057's White/Caucasian members, which constitute an overwhelming majority of its members. At Step III, Rhame appointed his Vice President, Robert Saunders (SUNDER) to sit in his place. Even Saunders voted to deny our grievance; further illustrating Local 2057's support of the discriminatory examination.

      (a)    The identify of the person or persons who acted on behalf of Local 2057 to discriminate against the plaintiffs.

<p align="center">Answer:</p>

Rhame and Saunders, President of Local 2057 and Vice President of Local 2057 respectively (both White/Caucasian), the then current Officers and/or Directors of Local 2057; as well as other witnesses that are unknown at this time, but may be revealed during the course of discovery.

      (b)    The time and date of the events described in response to this interrogatory.

<p align="center">Answer:</p>

*See* the initial response to this interrogatory in response to this subpart.

      (c)    Identify each and every person who acted in concert with Local 2057 to discriminate against the plaintiffs.

<p align="center">Answer:</p>

At this time, the only individual that we strongly suspect acted in concert with Local 2057 to discriminate against us is former Chief Iacona. However, other individuals within Local 2057 and/or Defendant Orange County may be revealed through the course of discovery in further response to this subpart.

      (d)    Identify witnesses to the events described in response to this interrogatory and describe the knowledge of each witness identified.

<p align="center">Answer:</p>

Obviously, Iacona, Rhame, Saunders, Robert Wilcox, Laurie Sweeney, Tom Sawyer, James Fitzgerald, District Chief, Jackie Clark, Human Resources, and the nonminority individuals who were present as observers at the Step II grievance hearing witnessed Rhame's role in defending the examination and Orange County management. Saunders also failed to support our grievance at Step III (GAB hearing). However, other witnesses may be identified

<p align="center">3</p>

and revealed through the course of discovery in further response to this subpart. The witnesses themselves will obviously have to be queried to determine the substance of their knowledge.

(e)      The identity of each and every document that supports your contention.

### Answer:

The current documents that we believe illustrate our contention that we have been the subject of discrimination by Local 2057 include, but may not be necessarily limited to, Article 23, Section 23.08(C) of the Agreement between Orange County and Local 2057, which requires an eight-year experience requirement to be considered eligible to sit for the lieutenant's promotional examination; a provision pushed strongly by Local 2057 because of the fact that it favored non-minorities. The examination itself, with its overwhelming disparate impact in controvention of EEOC guidelines, as well as the list of source materials, are also documents in support of our claim of discrimination. The Union willingly helped facilitate the discrimination through providing SME's, such as Rhame, to assist in drafting the examination.

The letter from Rhame of April 7, 2000 (Exhibit F to the Verified Complaint) is also a document that we contend illustrates the Union's intent to discriminate against us by refusing to pursue our grievance to and through arbitration, as well as refusing to even bless our proceeding forward to arbitration through private counsel. Other documents which we contend reveal the discriminatory actions of Local 2057 include, but are not necessarily limited to, comments by Rhame to the press in support of the promotional examination, and/or in defense of Iacona. There may be other documents revealed through the course of discovery in response to this subpart of the interrogatory, but which are not presently known. Transcripts from both the Step II and Step III (GAB) grievance proceedings, as well as the news stories and television interviews conducted with Rhame, would provide additional documentary basis for our contentions. In further response to the subpart to this interrogatory, please see our response to Local 2057's Request to Produce and the documents provided therewith, or referenced therein.

### Interrogatory No. 2

Concerning the allegations of paragraph 24, state in full detail and with particularity all facts that support your contention.

### Answer:

Please see our response to Interrogatory No. 1, inclusive. However, since discovery has just recently commenced in this litigation, other facts may be identified in support of our contention, which are not presently known.

### Interrogatory No. 3

Identify all persons who have information that support the allegations of the complaint, and for each witness identified describe in detail the knowledge of each person so identified.

4

#### Answer:

We object to this interrogatory as being overly broad, vague and incapable of being definitively answered as it is impossible to know all persons who have information to support the allegations of our complaint. However, notwithstanding this objection, the individuals identified in response to Interrogatory No. 1, as well as the test experts/designers retained by Orange County, Burroughs & Rockhill, Inc., and our own retained expert, Paul Hoffman, Ph.D., are other individuals with information in support of, or information relating to, the allegations of our complaint. Other individuals, both within Defendant Orange County and Defendant Local 2057, may be revealed through the course of discovery in response to this interrogatory, but which are not presently known.

### *First Set of Admissions*

#### Request Seven

Admit that the plaintiffs did not provide Local 2057 with any evidence of cheating in the administration of the disputed lieutenant's promotion exam.

#### Answer:

Admitted only that Plaintiffs did not provide any documented evidence of cheating in the administration of the lieutenants promotional exam; however, suspicions were raised.

#### Request Eight

Admit that the Perry, Hawkins, McLean, Suarez, and Baquero did not file an EEOC charge of discrimination against Local 2057.

#### Answer:

Denied, as the charge of discrimination filed by Plaintiff Jackson covered the remaining five Plaintiffs under the "single filing rule".

#### Request Nine

Admit that the Perry, Hawkins, McLean, Suarez, and Baquero did not receive a "Right-to-Sue" notice from the EEOC.

Answer:

Denied, as the right to sue letter received for Plaintiff Jackson applied to the remaining five Plaintiffs under the "single filing rule".

### *Initial Disclosures*

**2. Documents.**  The Plaintiffs will provide to the Defendants and, in fact, are in the process of responding to Defendant Local 2057's request for documents that will be utilized to support their claims; unless privileged or used solely for impeachment purposes.  The documents fall into categories which include, but may not necessarily be limited to, tax returns and financial data, job analyses, job experiences, personnel files, study materials for the lieutenant's examination, the examinations themselves and their results, the union contract, promotion lists, expert reports assessing the lieutenant's examination; as well as other evidence to support the claims of discrimination in the Fire & Rescue Department and/or the Union's role in the creation of the discriminatory examination, and the continuation of discrimination within the Fire & Rescue Department.

### *Certificate of Conference*

3. On December 4, 2001, Local 2057 sent plaintiffs a letter specifying how several interrogatory responses and answers to requests for admission were evasive or incomplete.  A copy of that letter is attached as Exhibit "A."  On December 19, 2001, plaintiffs replied that its answers and responses were satisfactory and stated that Local 2057 should feel free to file a motion to compel if it remained dissatisfied.  A copy of plaintiffs' response is attached hereto as Exhibit "B."  On October 29, 2001, Local 2057 wrote plaintiffs a letter specifying the

6

deficiencies in its initial disclosure of documents, which is attached as Exhibit "C." On

November 1, 2001, plaintiffs responded that its disclosures were adequate and suggested that

Local 2057 could file a motion to compel if it remained dissatisfied. See Exhibit "D." This

correspondence demonstrates the necessity of filing a motion to compel to resolve these ongoing

discovery disputes. In addition during the months of November and December, 2001, both

Joseph Egan and undersigned counsel had several telephone conversations regarding the issues

raised by these motions. In these conversations, defense counsel, Gary Wilson, indicated

Plaintiffs would not change their position with regard to the issues in dispute.

    4. As explained in the memorandum of law below, plaintiffs' positions with regard to these

discovery disputes are not well-taken.

    WHEREFORE, Local 2057 moves for an order compelling discovery.

## MEMORANDUM OF LAW

    Fed.R.Civ.P. 37 (a) provides that a party, upon reasonable notice to other parties and all

persons affected thereby, may apply for an order compelling discovery. The forms of discovery

specified in Rule 37(a) include both initial disclosures required by Rule 26(a) as well as answers

to interrogatories propounded under Rule 33. Rule 37(a)(3) specifically provides that an evasive

or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer or

respond. Fed.R.Civ.P. 36 (a) similarly provides that a party who has requested admissions may

move to determine the sufficiency of the answers or objections.

### THE DISPUTED INTERROGATORIES

Local 2057's first interrogatory requested *"full detail and with particularity all facts"* that supported plaintiffs' contention that Local 2057 discriminated against them.  Its second interrogatory requested plaintiffs' to state *"in full detail and with particularity all facts"* that supported plaintiffs' allegations in paragraph 24 of the complaint.  Its third interrogatory asked plaintiffs to *"describe in detail"* the knowledge of each person identified as having information supporting the allegations of the complaint.  Plaintiffs' responses, however, were broad, general and conclusory.

With regard to the first interrogatory, plaintiffs broadly assert that Local 2057 discriminated against them "by its actions, which included, but are not necessarily limited to, the participation in the creation of the flawed lieutenant's promotional examination which had an extreme statistical disparate impact upon minorities like ourselves."  Plaintiffs assert that union president Mark Rhame served as a Subject Matter Expert (SME) and knew, or reasonably should have known, that the test would have an overwhelming discriminatory impact."

How exactly did Rhame "participate in the creation of the flawed lieutenant's examination."  Which portions of the test, if any, did Rhame have a role in writing, and what kind of role?  Plaintiffs fail to specify which flaws Rhame knew about and when, and which facts support their conclusion that Rhame knew those flaws would have an "extreme disparate impact" upon minorities.  The answer is so skimpy that Local 2057 cannot tell whether Rhame actually played a significant role in writing an examination that he knew would discriminate against minorities or whether instead Rhame had an insignificant role in drafting an examination which he had no

8

reason to believe would discriminate against anyone.  No dates are provided as requested in subpart (b) of the interrogatory.  The response to subpart (d) concerning these allegations provides no witnesses other than Rhame himself.  No documents are identified in response to subpart (e) other than the test itself and the source materials.

Later in the answer, plaintiffs state that "[L]ocal 2057 was following what we had perceived to be an historical pattern, practice and attitude towards minorities by Local 2057 in not pursuing matters to arbitration (despite the merits) when it was perceived to be adverse to the interests of Local 2057's White/Caucasian members..."  Exactly which matters are the plaintiffs talking about and when did they arise?  Again no dates are provided, and no documents or witnesses are identified that support this contention.

Interrogatory 2 requested that plaintiff provide "full detail and with particularity all facts that support your contention" concerning the allegations of paragraph 24 of the complaint.  However, plaintiffs did not provide the particulars with regard to 24(a), which alleged that they were denied the same on-the-job training experiences and approval for course training that are provided to white firefighters.  Which plaintiffs were denied exactly what and when were they denied?

Paragraph 24(d) of the complaint alleged that certain favored, non-minority applicants were provided with information concerning the lieutenant's exam consisting of subject areas to be examined, source materials to be utilized as well as some of the correct answers on certain portions of the test with the objective of excluding minorities from promotion.  Who were these non-minority applicants?  What specific information were they provided?  Who provided it to them? When?  To which subject areas did the information pertain?  What source materials were

9

they advised to utilize?  Which non-minority applicants got which correct answers from whom on which portions of the examination?

Paragraph 24(e) alleged that the county and union participated in the creation of an examination through its SME's, relative to the subjective criteria and knowledge gained through on-the-job experience of the SME's, rather than the test being based upon Standard Operating Procedures of the County.  Who were all of these SME's?  How exactly did they participate? How many were officers or agents of the union?  Exactly which portions of the examination were based upon exactly which subjective criteria and knowledge of which persons gained through which on-the-job experiences?

Again, Local 2057 is entitled to more than general, conclusory responses.

Interrogatory No. 3 asked plaintiffs to identify all persons who have information that support the allegations of the complaint and to describe the knowledge of each such person identified. Plaintiffs answered by referring Local 2057 to their answer to interrogatory 1(d) and also identifying the designers of the examination and plaintiffs's retained expert, Paul Hoffman, Ph.D. Nearly all of the persons identified in the answer to interrogatory 1(d) were persons who observed stages of the grievance process.  Plaintiffs did not identify anyone to support various key allegations in the complaint.  Who are the persons who know about how the union (allegedly) historically discriminated against minorities and what do they know?  Who are the persons who know how the union knowingly assisted in creating a flawed and discriminatory examination and what do they know?  Who are the persons who knew how certain non-minority employees were favored with test questions or other information not provided to minority

10

employees and what do they know?  Who are the plaintiffs who were denied on the job training experiences and approval for course training and what do they know?

Local 2057's interrogatories were calculated to elicit detailed explanations of the basis for plaintiffs' suit.  However, plaintiffs answered these interrogatories in a lazy, incomplete manner.

### THE REQUESTS FOR ADMISSIONS

Four of plaintiffs' answers to admissions were evasive and therefore insufficient.  Number 7 of Local 2057's first set of requests for admission asked plaintiffs to admit that they provided no evidence of cheating to the local prior to filing the lawsuit.  Plaintiffs admitted that no "documented" evidence of cheating was provided but added that "suspicions" were raised.  Are plaintiffs suggesting that these "suspicions" were tantamount to undocumented evidence of cheating?  Since "suspicions" are not evidence, Plaintiffs should have admitted this request. Numbers 8 and 9 of Local 2057's first set of requests asked plaintiffs to admit that several of them never filed a charge of discrimination with the EEOC or never received a right to sue letter. Plaintiffs denied these requests by stating that these plaintiffs were covered by a charge filed by a different plaintiff.  However, the requests asked plaintiffs to admit that several of them never physically filed a charge nor received a letter. Whether or not they could be considered covered under a charge filed by another plaintiff is therefore beside the point with regard to truthfully responding to the requests.  Number 10 of plaintiffs' first set of requests asked plaintiffs to admit that Perry, Hawkins and Jackson never asked for the assistance of the Local in challenging the disputed examination.  Instead of admitting this request, plaintiffs sidestepped the request by

11

stating that they were present when President Rhame allegedly defended the promotional examination at the Step II hearing in the grievance process.

## THE INITIAL DISCLOSURES

In its letter of October 29, 2001, Local 2057 complained that plaintiffs' list of various categories of documents was so broad and general that Local 2057 was left uncertain as to what documents that plaintiffs had or whether they had been provided. Defendant sent its letter after attempting to match the documents received in response to its document request with those listed in plaintiffs' initial disclosures. Plaintiffs' letter of November 1 did clarify what was contained within some of the different categories of listed documents.  For instance, "financial data," according to plaintiffs, was intended to mean their tax returns.  "Job experiences" are allegedly contained on documents within plaintiffs' personnel files. Unfortunately, however, plaintiffs failed to clarify which or how many different documents are included within the category of "job analyses."  Similarly, plaintiffs did not clarify which or how many documents were contained within the category "study materials." Plaintiffs should clarify exactly which documents are included within these categories so that defendant may ascertain whether or not it has received copies of them.

## EXPENSES AND SANCTIONS

Fed.R.Civ.P. 37(a)(4) also provides that where a Rule 37 motion is granted,  a court may award expenses and sanctions if a motion is granted unless the opposing party's nondisclosure, response, or objection was substantially justified or other circumstances would make an award of

expenses unjust. The deficiencies about which Local 2057 complained were straightforward and obvious. Local 2057 provided plaintiffs ample opportunity to correct these deficiencies before filing its motion. Accordingly, an award of expenses is appropriate.

## Certificate of Service

I hereby certify that a copy of the foregoing Amended Motion to Compel was sent by U.S. mail this __14th__ day of January 2002 to Gary D. Wilson, Esquire, Red Willow Plaza, Thomas J. Pilacek & Associates, 5844 Red Bug Lake Road, Winter Springs, Florida 32708, and Deborah Samuels, Esquire, Ackerman, Senterfitt & Eidson, P.O. Box 231, Orlando, Florida 32802.

<div style="margin-left:50%">

EGAN, LEV, SIWICA, P.A.
P.O. Box 2231
Orlando, Florida 32802
(407) 422-1400

By: _____
Tobe Lev
#226475

</div>

JOSEPH EGAN, JR.
TOBE M. LEV
RICHARD P. SIWICA
KATHRYN S. PISCITELLI

POST OFFICE BOX 2231
ORLANDO, FLORIDA 32802-2231
TEL (407) 422-1400
FAX (407) 422-3658

STREET ADDRESS
231 E. COLONIAL DRIVE
ORLANDO, FLORIDA
32801

December 4, 2001

Mr. Gary Wilson
Law Offices of Thomas J. Pilacek and Associates
5844 Red Bug Lake Road
Winter Springs, Florida 32708

      Re: Perry et al v. Local 2057

Dear Mr. Wilson:

      We have reviewed your interrogatory answers and responses to our two sets of requests for admissions. We believe that the answers and responses are insufficient for the following reasons:

*Interrogatories:*

      With regard to interrogatory 1, defendant requested that plaintiffs "state in full detail and with particularity all facts that support your contention" that Local 2057 intentionally discriminated against the plaintiffs. The response contains several conclusory phrases that lack detail and particularity.

      For instance, the answer states that the Local "participat[ed] in the creation of the flawed lieutenant's promotional examination which had an extreme statistical disparate impact upon minorities like ourselves" and further that "Local 2057's President, Mark Rhame, served as a Subject Matter Expert and knew, or reasonably should have known, that the test would have an overwhelming discriminatory impact." Exactly what flaws did Rhame know about and when, and exactly what facts do you rely upon to support your conclusion that Rhame knew these flaws would have "an extreme disparate impact" upon minorities. No dates are provided as requested in interrogatory 1(b), no documents. No witnesses are provided other than Rhame regarding Local 2057's "participation in the creation of the flawed lieutenant's promotional examination." The witnesses listed in response to interrogatory 1(d) only appear to have knowledge of the grievance process, and not Rhame's alleged foreknowledge that the flawed test would have an impact upon minorities.. No documents are identified with respect this allegation other than the test itself and the source materials.

Later in the answer, plaintiffs state that "[L]ocal 2057 was following what we had perceived to be an historical pattern, practice and attitude towards minorities by Local 2057 in not pursuing matters to arbitration (despite the merits) when it was perceived to be adverse to the interests of Local 2057's White/Caucasian members..." Exactly which matters are the plaintiffs talking about and when did they arise? Again no dates are provided, and no documents or witnesses are identified that support this contention.

Interrogatory 2 requested that plaintiff provide "full detail and with particularity all facts that support your contention" concerning the allegations of paragraph 24. However, plaintiffs did not provide the particulars with regard to 24(a) which alleged that they were denied the same on-the-job training experiences and approval for course training that are provided to white firefighters. Who was denied what and when?

Paragraph 24(d) alleged that certain favored, non-minority applicants were provided with information concerning the lieutenant's exam consisting of subject areas to be examined, source material to be utilized as well as some of the correct answers on certain portions of the test with the objective of excluding minorities from promotion.

Who were these non-minority applicants? What specific information were they provided? When? Which subject areas? What source materials? Who got which correct answers on which portions of the exam?

Paragraph 24(e) alleged that the county and union participated in the creation of an examination through its SME's, relative to the subjective criteria and knowledge gained through on-the-job experience of the SME's, rather than the test being based upon Standard Operating Procedures of the County. Who were all of these SME's? How exactly did they participate? Exactly which portions of the examination were based upon exactly which subjective criteria and knowledge of which persons gained through which on-the-job experience?

Interrogatory No. 3 asked plaintiffs to identify all persons who have information that support the allegations of the complaint, and to describe the knowledge of each such person so identified. Plaintiffs identified the persons already identified in their answer to interrogatory one, the experts/designers of the examination and Paul Hoffman. Except for Rhame, the only persons identified in the answer to interrogatory one were those who witnessed one or more stages of the grievance process. Who are the persons who know about how the union (allegedly) historically discriminated against minorities and what do they know? Who are the persons who know how the union knowingly assisted in creating a flawed and discriminatory examination and what do they know? Who are the persons who knew how certain non-minority employees were favored with test questions or other information not provided to minority employees and what do they know? For that matter, who are the plaintiffs who were denied on the job training experiences and approval for course training and what do they know?

2

Some of plaintiffs' responses to our requests for admissions are improper or evasive. Plaintiffs admitted Number 7 of our first request for admissions asking whether any evidence of cheating was provided but with the qualification that no documented evidence was provided but that suspicions were raised. Since suspicions are not evidence, the union does not understand why the response was qualified. Numbers 8 and 9 of our first request for admissions were denied with the explanation that the charge filed by plaintiff Jackson covered the remaining five plaintiffs. However, the requests asked whether the remaining five plaintiffs filed their own charges and not whether or not they were allegedly covered by a charge a different plaintiff filed. The requests should have been admitted. Number 10 of our first request for admissions was denied but the explanation for the denial that they were present when Rhame defended the examination at a Step II hearing did not address the substance of the request, which was that Perry, Hawkins and Jackson never asked for the assistance of Local 2057 in challenging the disputed examination.

We would appreciate if you amend your responses to the interrogatories and admissions specified above within the next ten days.

Sincerely,

Tobe Lev

TL/dlb
cc: Jerry Polk, Local 2057

# THOMAS J. PILACEK
## & ASSOCIATES

Attorneys at Law

THOMAS J. PILACEK
*Florida Bar Board Certified*
*Specialist in Labor and Employment Law*

GARY D. WILSON

DEBORAH C. BROCK
*Legal Assistant / Firm Administrator*

December 19, 2001

RECEIVED

DEC 2 6 2001

EGAN, LEV, & SIWICA, P.A.

**VIA FACSIMILE & U.S. MAIL**

Tobe Lev, Esquire
Egan, Lev & Siwica
P.O. Box 2231
Orlando, FL 32802-2231

Re:  *Booker Perry, et al. v. Orange County, Florida and IAFF/Local 2057*

Dear Tobe:

I am writing in response to your letters of December 4th and 17th in the above matter, and specifically addressing what you and your client (Local 2057) contend to be insufficient responses from our clients, in part, to the Union's First Set of Interrogatories and certain portions of the First Request for Admissions. I apologize for not being able to respond sooner as I have been extremely busy in depositions in a suit with a discovery cutoff within the next few weeks.

I have taken the opportunity to carefully review your letter and went back and re-evaluated the answers supplied by our clients to the interrogatories and the First Request for Admissions at issue. Our clients stand by the answers that have been provided as being sufficient under the rules. It is our clients' contention, as well as our own, that the answers supplied to Interrogatories No. 1, 2 and 3 are sufficiently explicit with factual allegations, reference to dates and individuals, as well as documents identified therein. The answers to those interrogatories encompassed six pages (albeit double spaced) and were fairly replete with specific allegations. Moreover, there have been documents produced to your office in response to discovery requests totaling approximately five inches in height. Although I know that you have not been present at the commencement of the depositions of three of the Plaintiffs most, if not all, of the questions that you pose at pages one and two of your letter of December 4th can be more appropriately addressed during the depositions if you do not believe the answers to interrogatories have been sufficiently clear.

I also disagree with your contention that our answers to numbers 7, 8 and 9 of your client's First Request for Admissions were not accurate or sufficient. Our responses to numbers 8 and 9 of the First Request for Admissions were properly denied as legal authority supports the "single filing"

rule, whereby the charge filed by one of our individual clients was deemed to be a filing by all. Therefore, we still contend that our clients have filed their own charges of discrimination. In response to number 10 of the First Request for Admission, I believe that there is clearly a factual dispute as our clients contend that the assistence of Local 2057 in challenging the disputed examination <u>was</u> requested. Certainly this may well be a matter of factual dispute, but which can be more appropriately addressed during depositions. As you may know, or will soon be informed, the depositions of the three plaintiffs which have commenced (Perry, Suarez and McLean) as well as the remaining three, will all be taken next month.

As a last resort if you are still dissatisfied, you are free to file a motion to compel as we believe our clients' answers have been comprehensive enough; particularly given the fact that their depositions have not even been completed yet.

Very truly yours,

Gary D. Wilson

GDW/lk

cc:     Deborah Samuels, Esquire (via facsimile)
        Clients

# E ⸺, LEV & SIWICA, P. A.

## ATTORNEYS AND COUNSELORS AT LAW

JOSEPH EGAN, JR.
TOBE M. LEV
RICHARD P. SIWICA
KATHRYN S. PISCITELLI

POST OFFICE BOX 2231
ORLANDO, FLORIDA 32802-2231
TEL (407) 422-1400
FAX (407) 422-3658

STREET ADDRESS
231 E. COLONIAL DRIVE
ORLANDO, FLORIDA
32801

October 29, 2001

**Via U.S. Mail**

Mr. Gary Wilson
Thomas J. Pilacek & Assoc.
Red Willow Plaza
State Red Bug Lake Road
Winter Springs, Florida 32708

Re: Plaintiffs' initial disclosures

Dear Mr. Wilson:

I am writing to resolve a pending discovery dispute with respect to the plaintiffs's initial disclosures. You have already communicated about this dispute with Joe Egan by letter on June 18 and in subsequent e-mails and phone conversations.

Our position has consistently been that your list of categories of documents is too broad and general. We cannot tell what many of these categories contain from the descriptions used. Therefore, we cannot be sure that you provided *any* of the documents contained in some of these categories in your response to our document request. In other instances, we cannot be sure that you provided *all* of the documents contained in the particular category. In yet other instances, we are reasonably sure what the category includes (i.e. "tax returns"), but none of the documents in the category were evidently produced.

Our specific concerns are as follows:

(1)  What exactly are "financial data". It does not appear that any "financial data" were turned over in response to our document requests.

(2) What are "job experiences." It does not appear that any document pertaining to this category were turned over in response to our document requests.



(3)  We received no tax returns.

(4)  We received a voluminous Orange County Division of Fire Rescue 1998 Operations Lieutenant Job Analysis."  Is this the only analysis referred to in your initial disclosures?

(5)  We have no idea which personnel files you referred to in your initial disclosures. In any event, we received no personnel files.

(6)  Similarly, we received an Orange County Fire Rescue Division Lieutenant Written Examination and assessment Center 1999 Candidate Orientation Workshop. Was this what you referred to as "study materials?"  Are there any others?

(7)  Have you provided all of the promotions lists that you referred to in your initial disclosures?

(8)  Finally, your initial disclosures states that your documents "may not necessarily be limited to" the aforementioned categories.  What other categories do you have in mind?

Please provide us more specific initial disclosures and also respond to these specific concerns. To the extent that you are holding documents that fall within the vague categories in your initial disclosures that you have yet to produce, we request that you produce them now since defendant needs them before scheduling depositions.

The  union would like to amicably resolve this matter.  However, if it cannot be amicably resolved, it intends to request the court's assistance in resolving it.  I look forward to your prompt response.

Sincerely,

Tobe Lev

# THOMAS J. PILACEK
## & ASSOCIATES

**Attorneys at Law**

COPY

RECEIVED
NOV 0 2 2001

EGAN, LEV, & SIWICA, P.A

OMAS J. PILACEK
RY D. WILSON

DEBORAH C. BROCK
*Legal Assistant / Firm Administrator*

November 1, 2001

Tobe Lev, Esquire
Egan, Lev & Siwica, P.A.
P.O. Box 2231
Orlando, FL 32802-2231

Re:  *Booker Perry, et al. v. Orange County, Florida and IAFF/Local 2057*

Dear Tobe:

I am writing in response to your letter of October 29, 2001 in the above matter. Frankly, Tobe, this issue is, to borrow the expression, "beating a dead horse." I have discussed this issue ad nauseam with both Joe and Kathryn of your office. Furthermore, we are well past initial disclosure issues by virtue of the fact that we have fully responded with actual discovery in this matter in the form of answers to your client's interrogatories and request to produce.

In fact, while your client did not specifically ask for tax returns, copies were nonetheless provided to your office in response to the County's First Request for Production. This obviously relates to the "financial data" which was referenced in our initial core disclosure. In addition, any matter in relation to "job experiences" will obviously be in the possession of the County, in the form of our client's personnel files; for which your client can obviously request from the County, as we did. As to your question about other promotions. you should know from reading the complaint that the only promotion at issue is the 1999 lieutenant's promotion.

In short, and as I previously conveyed on more than one occasion to Joe and Kathryn of your firm, it remains our position that we fully and properly complied with the initial core disclosures. In fact, we actually amended our initial disclosure to more fully address concerns that were raised by Joe. We do not believe that there is any more definitive response required (particularly at this juncture); nor are there any other records in our clients' possession that we are aware of in response to your client's requests, as well as your latest letter. As I have said several times, if the Union feels the need to press this

Tobe Lev, Esquire
November 1, 2001
Page 2 of 2

initial core disclosure issue any further, then certainly you have the right to do so; although we will view such action as frivolous, without merit, solely meant to harass, and we are prepared to defend same.

Very truly yours,

*Gary D. Wilson*

Gary D. Wilson

GDW/lk

cc:   Booker Perry
      James Jackson
      Stacy McLean
      Juan Baquero
      Terry Hawkins
      Robson Suarez