UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BOOKER PERRY, JAMES JACKSON,
STACY MCLEAN, TERRY HAWKINS,
ROBERT SUAREZ, and JUAN BAQUERO,

      Plaintiffs,

vs.                      CASE NO. 6:01–CV–208–ORL–22JGG

ORANGE COUNTY, FLORIDA, and
ORANGE COUNTY PROFESSIONAL
FIRE FIGHTERS, LOCAL 2057,
INTERNATIONAL ASSOCIATION
OF FIRE FIGHTERS,

      Defendants.

_____/

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT COUNTY'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DISPARATE IMPACT (COUNT III)

Plaintiffs, BOOKER PERRY, JAMES JACKSON, STACY MCLEAN, TERRY

HAWKINS, ROBERT SUAREZ, and JUAN BAQUERO, through counsel, hereby

oppose the Motion for Summary Judgment filed by Defendant, ORANGE COUNTY,

FLORIDA [hereinafter referred to as the "COUNTY"], in the respects set forth herein.

### POSTURE

Plaintiffs filed a four-count complaint in connection with their failure to be

promoted to the rank of Lieutenant in 1999. Count I is for intentional race discrimination

in violation of 42 U.S.C. §1981 against both parties. Count II is for intentional race

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000,

et seq. against both parties ("Title VII). Count III is for disparate impact in violation of

Title VII against both parties. Count IV is for retaliation in violation of Title VII against ORANGE COUNTY PROFESSIONAL FIRE FIGHTERS, LOCAL 2057, [hereinafter referred to as the "UNION" or "LOCAL 2057"] only. Plaintiffs and the COUNTY have resolved the disparate treatment counts of this lawsuit (Counts I and II).

Defendant COUNTY has moved for summary judgment on the remaining disparate impact claim (Count III) claiming that the sample size of the minorities who took the 1999 exam was too small to be statistically reliable and that the Plaintiffs cannot make out their prima facie case. In this memorandum, the Plaintiffs will demonstrate that their statistical evidence is sufficient and that the statistical reliability of evidence is a question of fact for a court to decide. The Plaintiffs also will show in this memorandum that the COUNTY's subjective criteria for determining eligibility for promotion had a discriminatory effect in violation of law.

## FACTUAL SUMMARY

At the time of the events leading to this cause of action, ORANGE COUNTY Fire Rescue Division employed 770 persons. (See Plaintiffs' Exhibit A, "Martinez to oust Orange Fire Chief Iacona," *The Orlando, Sentinel*, April 11, 2000, pages A1, A7.) Of those 770 employees, 70 percent of the department's employees were White men, 10 percent of the department was black and 7 percent of the department was Hispanic. (See id. at page A7.) At that time, of the 122 lieutenants in the department, there were only four minorities, including two blacks, one Asian, one Native American and no Hispanics. (See id.) In contrast, of the 896,344 people that lived in ORANGE COUNTY, approximately 163,135 people (or 18.2 percent of the COUNTY's population) were black and, approximately 168,513 people (or 18.8 percent of the COUNTY's population) were

Hispanic. (See U.S. Census Bureau Statistics, 2000 Census, http://quickfacts.census.gov/qdf/states/12/12095.html.)

In 1999, the COUNTY and UNION were engaged in collective bargaining for the positions of firefighters, engineers, lieutenants, captains and inspectors. (See COUNTY, Ex. E at page 1.) The collective bargaining session came to an impasse over a couple of issues, including the procedure for promotion of firefighters and engineers to lieutenant (See COUNTY Ex. E at page 1.) The COUNTY Management proposed a time-in-grade requirement of 5 years in order for both firefighters and engineers to be eligible for the lieutenant's exam. (See id. at page 2.) The UNION, citing public safety but offering no statistical evidence, said an 8-year time-in-grade requirement would better protect public safety (See id. at page 3.) In a March 30, 1999 Impasse Hearing, the County Commission voted to impose an 8-year time-in-grade requirement for firefighters to be eligible to take the lieutenant's test (See COUNTY Ex. D at page 543.) The effect of this vote on minorities was severe. It reduced the number of minorities eligible to take the test from 89 (22 percent of the applicant pool) down to 61 (16.1 percent of the applicant pool) thereby eliminating from consideration 28 minorities. (See COUNTY Ex. E, Page 6.)

The COUNTY then announced a position opening for lieutenant on May 28, 1999. (See COUNTY Ex. G at page 1.) In that posting, the COUNTY announced that the there would be a four-part examination. (See id. at page 4.) The first three parts of the examination were written tests. Component one was a multiple-choice "Job Knowledge" exam. (See id.) The second component was a structured response tactical/operations exercise. (See id.) The third component was a subordinate problem exercise. (See id.) Only the top 60 scorers of the exam would move on to the fourth

component of the exam, an oral, interactive real-time role-play exercise. This was an arbitrary cut-off score based on the belief that the county would need only 20 lieutenants. (See id.)

The COUNTY solicited bids to develop the lieutenant's examination. Burroughs and Rockhill, Inc. of Oviedo, Florida, won the right to develop the lieutenant's examination for the COUNTY. They developed the test with the help of Subject Matter-Experts (SMEs). (See Plaintiffs' Ex. B.) Of the 20 SMEs, only six were minorities. (See id.) The first three components of the test were given to 133 firefighters/engineers over two days on October 11 and 12, 1999 at the First Baptist Church in Orlando (See COUNTY Ex. O, page 6.) Forty-seven candidates took Form A on October 11, 1999 and 86 candidates took Form B on October 12, 1999. (See id.) Of those test takers, 10 were black and 7 were Hispanic. (See id. at page 11.) The test was scored on October 25, 1999 and of the 60 candidates that passed the test, there was only one black person and there were no Hispanic persons. (See id.) The black person who did pass the first three components of the exam did not end up taking the fourth component for reasons unknown. Everyone who ended up passing components 1-3 ended up on the promotion list for lieutenant (See Plaintiffs' Exhibit C, Orange County Fire Rescue 1999 Lieutenant Promotion List.) and were eventually promoted to the rank of lieutenant.

On December 23, 1999, Plaintiff BOOKER PERRY filed a grievance in accordance with the collective bargaining agreement. (See COUNTY Ex. N, page 1.) The COUNTY on March 28, 2000 denied Plaintiff BOOKER PERRY's grievance. (See COUNTY Ex. O, page 1. ) B OOKER PERRY a nd JAMES JACKSON then  filed a complaint with the Florida Commission on Human Relations and with Equal

Employment Opportunity Commission on March 3, 2000. (See Plaintiffs' Ex. D generally.) The EEOC issued Plaintiff JACKSON a Right to Sue Notice on February 6, 2001 (See Plaintiffs' Ex. D at page 3.) The Plaintiffs then initiated this suit with this Court. The Plaintiffs are all members of protected classes. Plaintiffs PERRY, JACKSON, MCLEAN and HAWKINS are all members of a protected class because they are all Black (African American). Plaintiff BAQUERO is Hispanic and is a member of a protected class, a fact that the COUNTY does not challenge. Plaintiff SUAREZ is also Hispanic, because, according to EEOC definition, any person is Hispanic is they are of South American origin, regardless of race. (See Peightal v. Metropolitan Dade County, 26 F. 3d 1545 at 1551 (11th Cir. 1994).) In fact, SUAREZ is a speaker of Portuguese, the native language of Brazil. Because SUAREZ is from Brazil, which is in South America, and has a strong family ties and cultural and linguistic ties with Brazil, he is considered Hispanic under the EEOC guidelines, even though his native language is Portuguese. (See id. at pages 1551, 1559) The Defendant COUNTY's attempt to distinguish the Plaintiffs' case with Peightal is without merit. Consequently, all six Plaintiffs are members of a protected class and have standing to sue in this case.

## ARGUMENT

Disparate impact claims under Title VII challenge "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." (See Mems v. City of St. Paul Department of Fire Rescue and Safety Services, 224 F.3d 735, 740 (8th Cir. 2000).) There is a tripartite allocation of proof in disparate impact cases. The first prong of the analysis is the Prima Facie case, where the court will consider statistical

evidence presented by both the plaintiff and the defendant and on the basis of the statistics that are the most probative will determine the whether the challenged practice has a substantial disparate impact on a protected group. (See 42 U.S.C. §2000e-2(k)(1)(a)(i). See also Albemarle Paper Co. v. Moody, 422 U.S. 405 at 425-28.) The burden of proof at this first stage is on the plaintiff. (See Moody at 422 U.S. 405 at 425.)

The second prong is the business necessity prong. If the plaintiff establishes disparate impact, the inquiry becomes whether the practice is "job related for the position in question and consistent with business necessity". (See Griggs v. Duke Power Co., 401 U.S. 424 at 431(U.S. 1971) and 42 U.S.C. 2000e-(2)(k)(1)(A)(1).) The burden to prove this prong is on the defendant.

If the defendant proves the second prong of the test, the third prong is for the plaintiff to prove. The plaintiff can overcome a showing of business necessity by showing t hat t he e mployer refused t o im plement a n e ffective a lternative p ractice t hat would have a lesser disparate impact. (See Albemarle, 422 U.S. at 425.)

In this case, the COUNTY claims that because of a lack of substantial statistical evidence, the Plaintiffs cannot prove a prima facie case of disparate impact.[1] The Plaintiffs believe that they have presented sufficient expert testimony on the adequacy of its statistical data to establish a prima facie case as a matter of law, or at least to establish that a disputed issue of fact exists whether the Plaintiffs can establish a prima facie case.

**I: The Plaintiffs have produced enough evidence to show that they have established**

---

[1] The COUNTY does not argue either business necessity (prong 2) or effective alternative practices (prong 3) In an abundance of caution, however, those issues will be addressed herein in order to prove that summary judgment in favor of the COUNTY is not warranted.

**their prima facie case of disparate impact and therefore summary judgment is not warranted.**

The Plaintiffs must first make out their prima facie case of disparate impact on the Plaintiffs' protected class. (See <u>Griggs</u>, 401 U.S. 424 at 432. See also <u>Albemarle Paper Co</u>, 422 U.S. 405, 425.) This will be done in three ways. First, the Plaintiffs will show that their statistical evidence offered to prove the disparate impact is significantly significant. Second, the Plaintiffs will show that the COUNTY's 8-year time in grade requirement had a disparate impact because it disproportionately limited the number of minorities eligible to take the lieutenant's exam. Finally, the Plaintiffs will show that the COUNTY's decision to promote everyone who "passed" the test had a disparate impact on minorities.

**A. The Plaintiffs have presented evidence that the statistical pool of minorities in this case is large enough to prove their prima facie case of disparate impact.**

The first step in a disparate impact analysis is determining if the Plaintiff can prove that a specific employment policy or practice has a significantly disproportionate exclusionary impact on the Plaintiffs' protected class. (See <u>Griggs</u>, 401 U.S. 424 at 432. See also <u>Albemarle Paper Co</u>, 422 U.S. 405, 425.) The Plaintiffs may introduce statistical proof, including selection rates and pass/fail comparisons. A rule cited by this district as a valid way of determining disparate impact is known as the "80 percent rule". (See <u>Nash v. Consolidated City of Jacksonville</u>, 895 F. Supp 1536, 1542 (M.D. Fla. 1995).)

The 80 percent rule states that an employment practice has a disparate impact for the purposes of a Plaintiffs' prima facie case when members of the protected group

(African Americans and Hispanics in this case) are selected for promotion at a rate less than four-fifths (80 percent) than that of the allegedly preferred counterparts. (See id. and see also Stout v. Potter, 276 F.3d 1118, 1123(9th Cir. 2002).) In this case, the African American and Hispanic Plaintiffs both meet this 80 percent rule. In the COUNTY's final decision on promotion, 59 out of 116 Whites passed the first three components of the 1999 exam, a passage rate of 50.9 percent (See COUNTY Ex. M at page 11.) Of the 17 African Americans and Hispanics that took the test only one passed the first three components of the test a nd that person was not ultimately promoted. (See id.) The relevant ratio in this case is 6 percent/50.9 percent, or 12 percent, meaning that disparate impact would exist under the 80 percent rule.

The COUNTY attacks this rule for two reasons. First, it is their contention that the sample size of minorities is too small to produce statistically significant data. As support for this proposition, the COUNTY cites Mems and Nash v. Consolidated City of Jacksonville. However, both of those cases are distinguishable. In Mems, experts for **both** the Plaintiffs' **and** defendant agreed that the sample size of minorities was too small to be statistically significant and therefore the court accepted that conclusion. (See Mems, 224 F. 3d at 740.) That is certainly not the case here, where the Plaintiffs have presented expert testimony from Paul Hoffman, Ph.D, that the sample size **is** statistically significant and the COUNTY has presented expert testimony to the contrary, meaning there are conflicting expert opinions. Under summary judgment standards, this conflict must be resolved at trial.

In the Nash case only two of the 94 members of the City of Jacksonville Fire Department who took the promotion exam were African Americans. (See Nash v.

Consolidated City of Jacksonville, 895 F. Supp 1536, 1544-45 (M.D. Fla. 1995).) That means only three percent of the sample group were members of a protected class. In the instant case, 13 percent of the test takers were members of a protected class. Therefore, this sample size is "a big enough statistical pool for the court to dive into a disparate impact analysis." (See id. at 1545.)

In analyzing the test for the COUNTY, Burroughs and Rockhill, Inc. cited the case of Fudge v. City of Providence Fire Department for the proposition that 18 minorities was too small of a sample size. (COUNTY Ex. M at page 11) The court in that case did rule that 18 minorities was too small a sample, but did so only after the plaintiff put on no proof that 18 was an adequate sample size to prove that the exclusion was based on discrimination and not chance. (See 766 F. 2d 650, 658 (1st Cir. 1985).) In the instant case, however, the Plaintiffs have produced evidence that the COUNTY's discriminatory intent can be determined even with the small sample size. Paul Hoffman, Ph.D, the Plaintiffs' expert, said that using "Fisher's Exact Test" could be done with confidence, even with small samples. (COUNTY Ex. O at page 10) That test, according to Hoffman, is statistically significant. In fact, Hoffman offered proof that not only was this sample significant under "Fisher's Exact Test," but also under "Chi-Square" and 80 percent rule; and that even when Blacks and Hispanics are considered separately, their statistics are statistically significant. (COUNTY Ex. O, page 2, Plaintiffs' Ex. E, Hoffman Depo Exhibit 2, page2).

Hoffman is a leading expert in this field, having been hired by six cities and counties to produce tests that do not have disparate impact. (Plaintiffs' Ex. E, Hoffman Depo at page 20) He also has received a Ph.D in psychology with a minor in social

psychology and statistics from Stanford University. (See id. at page 15) Neither expert for the COUNTY (Burroughs or Rockhill) has extensive training in statistics. (See COUNTY Exhibit A at Appendix A.) Burroughs has a Ph.D in Industrial Psychology and Rockhill has a Master's degree in Industrial/Organization Psychology. (See id.) They do not have the statistical credentials of Hoffman. Based on the vast experience and education of Hoffman, there is a genuine question of fact as to whether the statistical pool in this case is significant. Therefore summary judgment is not appropriate at this time.

The COUNTY also will argue that the Plaintiffs cannot combine or "piggyback" minority groups for the purpose of statistical analysis. In this case, the Plaintiffs for the purpose of the claim of disparate impact alleged that the test had a disparate impact on all minorities who took the test. In their motion for summary judgment, the COUNTY cited the Mems case for the proposition that Plaintiffs cannot combine minority groups for the purpose of disparate impact analysis. In Mems, however, the court said that combining the passing scores **would** be appropriate if "we were looking at the examination's impact on all minorities". (See Mems 224 F. 3d at 740.) Since the Plaintiffs here alleged in the complaint that the test had a disparate impact on **all** minorities as a whole, combining the pass rates for African Americans and Hispanics was wholly appropriate under the standard laid out in Mems.

Other Circuits have spoken directly to the issue of what is needed to prove the prima facie case of disparate impact. In Teal v. Connecticut, the court said that when a "plaintiff establishes that a component of a selection process produced a disparate result and constituted a pass-fail barrier beyond which the complaining candidates were not

permitted to proceed, a prima facie case of disparate impact is established". (See 645 F. 2d 133, 135 (2d Cir. 1981).) In this case, 50.9 percent of the White firefighters that took the first three components of the test passed as opposed to 6 percent of the minority firefighters who took the first three components of the test. If a candidate did not pass the first three components of the test, he or she could not proceed to component 4 of the process.

Under the standard laid out in Teal, the Plaintiffs have met their burden of proof. Summary judgment in favor of the COUNTY is not appropriate. In fact, if this court accepts the standard laid out in Teal, the Plaintiffs have made out their prima facie case as a matter of law.

**B. The COUNTY's Requirement of 8 years time-in-grade also shows prima facie evidence of disparate impact on the minorities in the department.**

When the COUNTY was negotiating its contract with the UNION, one of the main issues that tied up the process was the time-in-grade requirement that would be followed when deciding to allow when firefighters and engineers could take the Lieutenant's Test. At impasse, the COUNTY and the UNION remained divided. The Fire Rescue Division suggested that there be a five-year time in grade requirement for firefighters to take the test (See COUNTY Ex. E at page 2.). Orange County Fire Rescue Division Chief Michael Iacona at the Impasse Hearing on March 30, 1999 said that he believed that public safety would not be compromised with the five-year time-in-grade requirement. (See id. at page 6.) The UNION, led by its president, Mark Rhame, stated that it wanted an 8-year time in grade requirement for firefighters and a 6-year time in grade requirement for engineers because those time periods would better protect public

safety, but offered no evidence of a difference in safety between 8 and 5 years. (See id. at page 4.) The Board of County Commissioners, after exhaustive debate, decided to adopt the UNION's proposal and required that firefighters have 8 years experience and engineers 6 years experience before they become eligible to take the lieutenant's exam. (COUNTY Ex. D at page 543)

If the COUNTY had adopted the 5-year requirement, 89 people or 22 percent of the applicant pool would have been minorities. With the 8 and 6-year requirements, the minority number dipped down to 61 people or 16.1 percent of the applicant pool, thereby disproportionately excluding minorities from eligibility to take the exam. (COUNTY Ex. E at page 6) This was known to both County Commissioners and the Union at the Impasse Hearing.

The use of this experience requirement is arguably objective. You do not want people with a lack of experience in positions where lives a re a t stake based on their decisions. In Sprulock v. United Airlines, Inc, the court said that when the job clearly requires a high degree of skill and the . . . human risks of hiring an unqualified applicant are great, the employer bears a lighter burden to show that his employment criteria are job related. (See 475 F.2d 216 at 219.) This language would seem to lower the COUNTY's level of needed justification for its 8-year rule. However, at the County Commission hearing, the UNION offered no evidence of any difference in safety between 5 and 8 years. County Management, however presented studies from other departments adopting a 5-year requirement and even a lesser 3-year rule. (COUNTY Ex. E, pages 2-3) The evidence established that the 5-year rule would provide the same

business necessity of protecting public health safety and welfare.

Also, Courts can look at an employer's past discrimination record when determining whether an experience requirement is justified. (See, e.g., Thorton v. Coffey, 618 F.2d 686,691 (10th Cir. 1980), where the court found discrimination where the Na tional Gua rd ha d a his tory of r acial s egregation a nd e xclusion a nd it f ailed t o establish a business necessity for its preference for Guard experience.) This case is especially analogous to the COUNTY and its record of hiring minority firefighters. In his deposition taken by way of written questions, former COUNTY Chairman Mel Martinez spoke of lawsuits filed by minority firefighters in the early 1990s who believed they were unfairly passed over for promotion as one of the reasons that he wanted a 5-year requirement. (See Plaintiffs' Ex. F, "Martinez Answers" at page 8.) He also said that the 5-year requirement would greatly add to the COUNTY's efforts to diversify the Fire Department. (See id. at page 10.) As shown in page 2 of this memorandum, minorities were vastly under-represented within the Fire and Rescue Division, particularly at the rank of lieutenant. This court should use a great deal of scrutiny when looking at the COUNTY's "experience" excuse especially in light of its past discrimination.

One circuit has ruled on a case very similar to this one. In Afro-American Patrolman's League v. Duck, 503 F. 2d 294, 302, (6th Cir, 1974), the T oledo Police Department had a five-year service requirement for advancement to sergeant. In that case, the court held that the five-year requirement was not shown to have any relationship to the requirements of the sergeant's job. (See id.) Moreover, the lower court had found that the five-year requirement had a tendency to preserve the status quo of whites because many of the black hires that came into the department came in within five years of the

administration of the exam. (See id. at page 300.) The circuit court did not overturn that finding. (See id. at page 303.) In the instant case, the COUNTY's eight-year requirement for promotion had the effect of eliminating from eligibility for promotion 28 minorities between 8 and 5 years, where minorities were more appropriately represented. Therefore, that decision helped preserve the status quo of Whites in management positions within the department.

Because the question of whether the COUNTY's time in grade requirement has justified a business necessity is still a disputed issue of material fact, a motion for summary judgment on the disparate impact claim is inappropriate. The court should decide these issues through its analysis of the facts at trial.

**C. The COUNTY's Decision to hire everyone who made it past the written examination while denying those who did not "pass" the written examination the opportunity to take the non-written 4th component also shows prima facie evidence of a disparate impact on minorities in the department.**

After the third component of the test had been c ompleted, 59 total candidates were passed on to component 4 of the test. (COUNTY Ex M. at page 11, Plaintiffs' Exhibit B) All 59 of those people who passed the written test were then promoted within the next two years. Generally, when making promotion decisions, the COUNTY normally interviews twice as many candidates as positions available. In the March 29, 1999 Impasse Meeting, former Chief Iacona told the Board of County Commissioners that in fact 20 or so positions were available to be filled. (COUNTY Ex. D, page 8) In fact, Burroughs and Rockhill determined the cut-off point for "passing" or "failing" based on the statement by Iacona that only 20 lieutenants were needed. By virtue of

sheer arithmetic, if the department had 59 lieutenant positions available, it would have been prudent for them to make the top 120 finishers eligible for promotion, especially if management truly wanted to meet its stated goal of diversifying the department. Most of the minority applicants fell between 60 and 120 on the test score-ranking list. (See Plaintiffs' Ex. G, Lieutenant Promotional Exam Scores generally.) The arbitrary decision to promote all 59 of the top scorers reinforced the disparate impact of the test because it kept in place the status quo of having all whites in positions of authority. If Iacona would have considered applicants 60-120, he could have used his "Rule of Four" power to move further down the list than number 59 and promote more minority candidates, thereby offsetting the disparate impact. (COUNTY Ex. D at page 21)

**II: The COUNTY has not produced evidence of business necessity for the test that is sufficient to carry its burden for summary judgment on the issue.**

Once the Plaintiffs have made out a prima facie showing that the test used produced a disparate impact on minorities, the COUNTY could overcome that showing by producing a business necessity for the test. (See Nash, 895 F. Supp at 1544.) In order to show business necessity, the COUNTY must show that the test was content valid, reliable and that the cut-off score used was also valid. (See id. at pages 1545 – 1552 and Guardians Assoc. v. Civil Serv. Comm'n, 630 F. 2d 79, 105.)

First, if a test is to be content valid, the COUNTY needs to prove that the knowledge, skills and abilities covered in the 1998 exam were knowledge, skills and abilities required for the job. (See Nash, 895 F. Supp at page 1545.) In this case, expert testimony from Hoffman shows that the test was not content valid because the tests measures leadership, decisiveness, interpersonal, organizing and planning, perception and

analysis, written communication and oral communication. (See Plaintiffs' Ex. E, Hoffman Depo, Exhibit 1 at page 10.) According to Hoffman, under Federal Uniform Guidelines, those traits are not appropriately measured in content valid examinations. (See id. and 29CFR §1607.14C(1).) The COUNTY's experts dispute Hoffman's conclusions that the test is not content valid. Once again, there are competing opinions of experts, so summary judgment on this issue is not warranted.

Second in the business necessity analysis is reliability. Reliability is the extent to which the exam would produce consistent results if applicants repeatedly took it or similar tests. (See Nash, 895 F. Supp. at 1548.) Hoffman said there was no way to determine this test's reliability because Burroughs and Rockhill did not offer any reliability information in their report. (See Plaintiffs' Ex. E, Hoffman Depo at pages 74-75.) Since the COUNTY has not proven its test is in fact reliable through the testimony of experts, it cannot win summary judgment on the issue.

The final step in the business necessity prong of the test is proving that the cut-off score used by the COUNTY was valid. (See Guardians Assoc. v. Civil Serv. Comm'n, 630 F. 2d 79, 105.) Cut-off scores must be related to job performance and if they are not, Title VII has been violated. (See id.) According to Hoffman, nothing in the information provided by Burroughs and Rockhill prove that there was any correlation between the cut-off score and competency for the position. (See Plaintiffs' Ex. E, Hoffman Depo at page 58.) In order for the Court to determine that the cut-off score had a relation to job performance, the Defendant must prove that those below the cut-off score could not do the job. Nothing in Burroughs and Rockhill's Project Final Report indicates that persons who scored between 60 and 133 could not perform the duties of the job. Therefore, since

the COUNTY cannot prove that the cut-off score was valid, it cannot show business necessity and summary judgment is not warranted.

## III. The Plaintiffs have presented enough alternative practices that summary judgment is precluded on the issue.

Even if the Court determines that there was a business necessity for the test, the Plaintiffs can still demonstrate that there were other practices that had a less discriminatory effect that could also suitably serve the COUNTY's needs. (See Nash, 895 F. Supp. at 1552.) In his deposition, Hoffman listed nine alternatives with less impact. (See Plaintiffs' Ex. E, Hoffman Depo, Exhibit 1, pages 7-8.) These alternatives include:

1) Pretest t he c omponents of t he e xam t o r eveal a ny b iases a gainst m inorities in questions;

2) Minimize Subjectivity: The Subject Metter Experts chosen by Burroughs and Rockhill used too much of their personal judgment when coming up with answers to the test questions. The answer key should have scrupulously adhered to the training manual and other materials provided to the candidates;

3) Eliminate items with racial bias: This could not be done because the exam had not been pre-tested;

4) Revise the set of subject matter experts (SMEs) and re-key the components of the examination: Burroughs and Rockhill did not present any evidence of the actual competence of the SMEs other then they were chiefs or lieutenants. There was no evidence presented on how long these officers had been with the department and how they knew which items to test that would be specific to Orange COUNTY's

standard operating procedure;

5) Adopt departmental standards for interpretation of test scores;

6) Eliminate the two-stage process and allow all candidates to take all four components of the test;

7) Follow the professional guideline for content validity and construction by testing just for knowledge, skill and ability, not for cognitive skills that are better tested in criterion valid studies;

8) Demand usage of the Federal Uniform Guidelines and provide a review system that insures that the Chief's selections are unambiguously based upon relevant factors and not extraneous factors and;

9) Include five enumerated factors to be considered in ties between candidates with essentially the same score. (See Plaintiffs' Ex. E, Hoffman Depo, pages 7-8 generally.)

There has been no response from the COUNTY on seven of nine of these alternatives that it contends would be less effective than the methods it used. (See id.) And its objections to criteria 4 and 9 were vague and not very useful in justification for the methods used. (See id.) The COUNTY may try to suggest that the methods the Plaintiffs suggested were more costly and therefore not as effective as the method that it chose. (See Nash, 895 F. Supp. at 1552.) However, it has presented no evidence to support that contention. In any event, there is a question of fact as to whether the Plaintiffs suggested alternatives are equally effective and therefore summary judgment is not appropriate.

## CONCLUSION

Because the Plaintiffs have shown that they have enough material facts to prove their prima facie case of disparate impact, because they've shown that the 8-year time-in-

grade requirement produces a disparate impact on minorities, and because they've shown

that the decision to promote all the people who passed the written exam had a disparate

impact on minorities, summary judgment is not appropriate. Summary judgment is also

not appropriate because the COUNTY has failed to show a business necessity for the test.

Also, t he P laintiffs ha ve p roduced nine a lternatives w ith l ess a dverse i mpact t hat t he

COUNTY has neither considered nor implemented. Accordingly, the COUNTY's

motion for Summary Judgment should be DENIED.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served by regular U. S. Mail upon Deborah A. Gibson, Esq., Kevin W. Shaughnessy,

Esq., and Rexford H. Stephens, Esq., AKERMAN, SENTERFITT & EIDSON, P.O. Box

231, Orlando, FL 32802; and Joseph Egan, Jr., Esq., and Tobe Lev, Esq., EGAN, LEV &

SIWICA, P.O. Box 2231, Orlando, FL 32802-2231, this 4th day of June, 2002.

THOMAS J. PILACEK & ASSOCIATES
Red Willow Plaza
5844 Red Bug Lake Road
Winter Springs, FL 32708
(407) 660-9595

BY: _____
Thomas J. Pilacek
Fla. Bar No. 143576

Counsel for Plaintiffs

# Martinez to oust Orange Fire Chief Iacona

☐ The county chairman is frustrated with the department's lack of diversity and low morale.

By Scott Maxwell
and Jon Steinman
OF THE SENTINEL STAFF

Orange County Fire Chief Mike Iacona will be forced out of his job running one of the most diverse and most controversial government agencies in Central

Florida.

County Chairman Mel Martinez confirmed Monday what in-house memos had detailed — Iacona will be out of his job as chief within the next three months. Martinez said he has grown frustrated watching morale plummet in the fire department where more than 95 percent of the top-ranking lieutenants are white.

Iacona, who has led the department for four years, did not return phone calls Monday. Martinez said the county will begin an extensive search for his successor.

County Commissioner Homer Hartage, who last month called for Iacona to be fired, said Martinez made a courageous decision. But others, such as Commissioner Ted Edwards, said that Iacona should not be forced out, arguing that diversity is an issue that most residents don't care about.

"A very small percentage of our constituents give a flip about the diversity in the ranks [of the fire department]," Edwards said. "I think it's a non-issue."

Such comments have outraged

Please see IACONA, A-7



SENTINEL FILE

**In hot seat.** Mike Iacona was hired in 199_, by Linda Chapin.

---

# Orange may hire consultant to diversify department

**IACONA** from A-1

Hartage. "Fire departments are one of the last bastions of racism," he said. "And people don't want to give that up."

Fire departments in many parts of the country historically have had diversity problems. Last week, New York City — the nation's largest city and one of its most diverse — was accused of racial bias by three black firefighters who alleged the city's fire department discriminates against blacks by passing them over for promotions and desirable transfers.

In Orange, most of the accusations of unfair hiring have focused on the higher-paying lieutenants' jobs. But the entire department lags behind the county's general population.

Overall, about 70 percent of the department's 770 employees are white men — compared with about 33 percent of the general population.

Ten percent of the department's employees are black men and women. Seven percent are Hispanic men and women. Women make up 16 percent of the department.

Of the 122 lieutenants, only four are minorities. Two are black. One is Asian. One is Native American. None is Hispanic.

Lieutenants are typically the first command-officers to arrive at fires and medical emergencies and manage firefighters directly.

Many county leaders, including Martinez, Hartage and Commissioner Mary I Johnson, have been complaining about the department's di-

versity problems for years, blaming Iacona.

"Well, he's been heading that department for several years . . . and the balance still doesn't represent the community," Johnson said. "So we need to get someone there who can."

Last year, six minority firefighters filed a grievance alleging that lieutenant promotion tests were rigged, making advancement for minority firefighters nearly impossible. But a county committee that investigated the matter last month found no evidence to support their claims.

News of Iacona's impending departure on Monday pleased one of the firefighters who is still appealing that grievance in court.

Firefighter Booker Perry said the decision was a sound one — though only a first step. "They need to do more now," he said.

But officials within the firefighters' union cried foul. "I think it's a big mistake," said union president Mark Rhame, who described his relationship with Iacona as productive and friendly. "He's being made a scapegoat, absolutely."

Still, those such as Rhame and Edwards know that Martinez gets to make this call on his own because the chairman can fire any county official.

"I'm certainly disappointed. I'm not sure the chief deserves to have this happen to him," Edwards said. "But I don't think it's up to our board to second-guess the chairman. Mel is the one who got elected."

Martinez said that the lack of di-

versity in the department was not the only reason he wants Iacona gone. Instead, he said he is simply continuing to hire his own staff. Iacona was a holdover from former Chairman Linda Chapin's term.

"Part of this is about putting more of my team in place," he said.

Nonetheless, a key part of the draft organization plan calls for creating a human-resources division to focus on fire department hiring — and possibly bringing in a consultant who specializes in diversity.

The consultant mentioned is Veronica Anderson, the former head of the state's minority-business program. Anderson also held a similar job with Orange for seven years until 1996. Anderson would not comment Monday.

Even though Anderson has been recommended to Martinez by some of his top staffers, the chairman said he still wasn't sure that he wanted to hire an outside consultant.

"I hate to hire a consultant to do what people who are paid a salary should be doing," he said.

Plus, Orange has had trouble diversifying the department in the past.

During the early 1990s, the county was vocal about wanting more diversity in the department's upper ranks But white firefighters, who thought they were overlooked for promotions, reacted by filing reverse-discrimination suits in 1994 and 1996. The lawsuits were settled in 1998 when the county agreed to pay firefighters and their attorneys $2.5 million.

Iacona was the deputy chief in Palm Beach County when he was hired in spring 1996 by then-Chairman Chapin. He replaced Chief Mitch Floyd, who was demoted from chief in 1995 — not long after several firefighters were found urinating on photographs of Chapin and then-commissioner Mable Butler. That incident also was related to frustrations over department hiring, though officials said Floyd's demotion had nothing to do with it.

Iacona, who makes $105,123 a year, has presided over a fiery four years at the department — years that saw diversity issues flare up and consume not just the department but also public attention.

Nevertheless, Rhame and others said Iacona was not to blame for the department's diversity and hiring issues.

"The diversity problems in the Fire Rescue division were here well before Mike Iacona became chief," said Tom Hurlburt, director of public safety, who oversees Fire Rescue.

Iacona may not lose his status as a county employee, though. Martinez said he may consider moving Iacona to a different position in the public-safety division — though he would not create a job for him.

Martinez knows that his plan will attract debate. But he said that all of his actions are designed ultimately to improve the division's service to residents. "The last thing I would ever want to do is anything that would compromise the public safety," he said

EXHIBIT "A"

# SUBJECT MATTER EXPERTS USED FOR THE LIEUTENANT EXAM

## Written Exam Panel
Chief John Hightower (B/M)
Chief Harry Belbeck (W/M)
Lt. Matt McGrew (W/M)
Lt. Elaine Fisher (W/F)
Lt. Mark Rhame (W/M)

## Structured Response In-Basket Exercise
Chief Harry Belbeck (W/M)
Lt. John Swilley (B/M)
Lt. Dave Wait (W/M)
Lt. Jerome Walker (B/M)

## Structured Response Tactical Exercise
Chief John Hightower (B/M)
Chief Harry Belbeck (W/M)
Lt. Jerome Walker (B/M)
Lt. Matt McGrew (W/M)
Lt. John Swilley (B/M)

## Interactive Real-Time Exercise
Chief Tom Mullany (W/M)
Chief Karl Ober (W/M)
Lt. Mark Richardson (W/M)
Lt. Matt McGrew (W/M)
Lt. Robert Boone (W/M)
Lt. Mark Rhame (W/M)



FIRE RESCUE DEPARTMENT
MIKE IACONA, Fire Chief
6590 Amory Court
Winter Park, Florida AL      497
(407) 836 0118 • Fax (    ) 836-9100
mike.iacona@co.orange.fl.us

## Orange County Fire Rescue
*1999 Lieutenant Promotional List*

| | NAME | SOCIAL SECURITY | | NAME | SOCIAL SECURITY |
|---|---|---|---|---|---|
| 1 | Wajda, Michael | | 31 | Morrow, Jay | |
| 2 | Marzilla, Anthony | | 32 | Michaelsen, Brian | |
| 3 | Stone, Lawrence | | 33 | Chesak, Jeff A. | |
| 4 | Mattox, William | | 34 | Hilliard, Lance | |
| 5 | Harroun, Marc | | 35 | Rathbun, David | |
| 6 | Zielonka, Debra | | 36 | Ratta, Mark | |
| 7 | Woock, David | | 37 | Kornbrust, John | |
| 8 | Brown, Douglas | | 38 | Wunderly, Tamara | |
| 9 | Lee, Robert | | 39 | Taylor, Toby | |
| 10 | Agan, Dave | | 40 | Fussell, Jr., Lawrence | |
| 11 | Moran, William | | 41 | Pirino, James | |
| 12 | Stanley, Greg | | 42 | Peters, Douglas | |
| 13 | Race, Jonathan | | 43 | Serrest, Rick | |
| 14 | Belu, Jonathan | | 44 | Scherr, Scott | |
| 15 | Peters, John | | 45 | Darber, Karen | |
| 16 | Price, Reggie | | 46 | McCrystal, Darrell | |
| 17 | Arnold, Gregg | | 47 | Reasley, Thomas | |
| 18 | Ross, Michael | | 48 | Neumann, Marcel | |
| 19 | Reineke, Robert | | 49 | Arrowood, Richard | |
| 20 | Wood, Jeffrey | | 50 | Clugston, Scott | |
| 21 | Provau, David | | 51 | Dickens, Jon | |
| 22 | Sturgeon, William | | 52 | Henderson, Kenneth | |
| 23 | Oliver, David | | 53 | Sabat, John | |
| 24 | Stanley, William, Jr. | | 54 | Hollsten, Daniel | |
| 25 | Cznupp, Jeffrey | | 55 | Elliott, Steven | |
| 26 | Minguy, Cynthia | | 56 | Ting, Thomas | |
| 27 | Hasken, Jon | | 57 | Sams, Douglas | |
| 28 | Reynolds, Richard | | 58 | Rullo, Thomas | |
| 29 | Mills, Henry | | 59 | Darby, Terrence | |
| 30 | Cyphers, II, Martin | | | | |

Posting Date: 12/17/99

Mike Iacona
Fire Chief

EXHIBIT "C"

This form is affected by the Privacy Act of 1974;
See Privacy Act Statement before completing this
form.

AGENCY

**Name (Indicate Mr., Ms. or Mrs.)**
Mr. Booker T. Perry & for other similarly situated
black/African-American & Hispanic Firefighters

**Telephone No. (area code)**

**Street Address**
2040 Rogers Street

Home

**City, State, and Zip Code**
Maitland, FL 32751

**Work (if possible to call you there)**
(407) 660-9595 (Thomas J. Pilacek, Esq.)

List the employer, labor organization, employment agency, apprenticeship committee, government agency or other person who discriminated against you.

| Name | No. of Employees | Telephone No. (area code) |
|------|------------------|---------------------------|
| Orange County, Florida (Fire & Rescue Department) | 15+ | (407) |

| Street Address | City, State and Zip Code | County |
|----------------|--------------------------|--------|
| 6590 Amory Court | Winter Park, Florida 32792 | Orange |

**CAUSE OF DISCRIMINATION BASED ON (check appropriate box(es))**

[X] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] HANDICAP
[ ] NATIONAL ORIGIN [ ] AGE [ ] MARITAL STATUS [ ] RETALIATION

**DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, year)**
10/11/99

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I.     PERSONAL HARM

On October 11th and 12th, 1999, a promotional examination for the position of Lieutenant was offered by my employer, Orange County, Florida (Fire & Rescue Department). With the exception of one person, all of the black/African-American and Hispanic employees who took the examination failed it. I have been continuously employed with Orange County as a Firefighter/EMT since on or about September 6, 1987.

II.     RESPONDENT'S REASON FOR ADVERSE ACTION

Please see attached.

III.     DISCRIMINATION STATEMENT

Please see attached.

I REQUEST THE FULL RELIEF TO WHICH I AM ENTITLED, UNDER THE LAW(S), INCLUDING DUAL FILING WITH THE EEOC.

I will advise the agency if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

Notary     (Required for Filing)
SUBSCRIBED AND SWORN TO BEFORE ME

SIGNATURE OF COMPLAINANT     3/3/2000 / DATE

3rd OF March , 2000.

Dana L. Leer
MY COMMISSION # CC892764 EXPIRES
December 14, 2003
BONDED THRU TROY FAIN INSURANCE INC.

EXHIBIT "D"

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file lawsuit against the respondent(s) named in the charge **within 90 days of the date you receive this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was mailed to you** (as indicated where the Notice is signed).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/96 to 12/1/96, you should file suit before 7/1/98 -- not 12/1/98 -- in order to recover unpaid wages due for July 1996. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION -- Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charges are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

## IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

-oOo-

CERTIFIED
COPY

BOOKER PERRY, JAMES JACKSON,
STACY MCCLEAN, TERRY HAWKINS,
ROBSON SUAREZ and JUAN BAQUERO,

      Plaintiffs,

    -vs-

ORANGE COUNTY, FLORIDA, and
ORANGE COUNTY PROFESSIONAL
FIREFIGHTERS, LOCAL 2057,
INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS,

      Defendants.

_____/

Case No.:
6:01-CV-208-ORL-22KRS



DEPOSITION OF PAUL J. HOFFMAN, Ph.D.

Thursday, April 25, 2002, 10:04 a.m.

REPORTED BY:
KATHY KELTY, CSR NO. 5064





Kelty & Scott LLC

Certified Shorthand Reporters
541 Jefferson Avenue, Suite 102
Redwood City, CA 94063
1.800.694.5558

EXHIBIT "E"

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

BOOKER PERRY, JAMES JACKSON,
STACY MCLEAN, TERRY HAWKINS,
ROBSON SUAREZ and JUAN BAQUERO,

      Plaintiffs,

vs.                           CASE NO. 6:01-CV-208-ORL-22JGG

ORANGE COUNTY, FLORIDA and
ORANGE COUNTY PROFESSIONAL
FIRE FIGHTERS, LOCAL 2057,
INTERNATIONAL ASSOCIATION
OF FIRE FIGHTERS,

      Defendants.

_____/

## DEFENDANT, ORANGE COUNTY, FLORIDA'S, NOTICE OF FILING RESPONSE OF NON-PARTY, MEL MARTINEZ, TO PLAINTIFFS' WRITTEN QUESTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 31 IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, ORANGE COUNTY, FLORIDA, by and through its undersigned counsel,

hereby gives notice of filing the original Response of Non-Party, Mel Martinez, to Plaintiffs'

Written Questions Under Federal Rule of Civil Procedure 31 this _2nd_ day of May, 2002, in

support of its Motion for Summary Judgment.

                              _____

                              Deborah A. Samuels, Esquire
                              Florida Bar No.: 826995
                              Kevin W. Shaughnessy, Esquire
                              Florida Bar No.: 473448
                              Rexford H. Stephens, Esquire
                              Florida Bar No.: 0150916
                              **AKERMAN, SENTERFITT & EIDSON, P.A.**
                              Post Office Box 231
                              Orlando, Florida 32802-0231
                              Phone: 407-843-7860
                              Fax: 407-843-6610
                              **ATTORNEYS FOR DEFENDANT**
                              **ORANGE COUNTY, FLORIDA**

             EXHIBIT "F"

BOOKER PERRY, JAMES JACKSON,
STACY MCLEAN, TERRY HAWKINS,
ROBSON SUAREZ and JUAN BAQUERO,

       Plaintiffs,

vs.                             CASE NO. 6:01-CV-208-ORL-22KRS

ORANGE COUNTY, FLORIDA and
ORANGE COUNTY PROFESSIONAL
FIRE FIGHTERS, LOCAL 2057,
INTERNATIONAL ASSOCIATION
OF FIRE FIGHTERS,

       Defendants.

_____/

## RESPONSE OF NON-PARTY, MEL MARTINEZ, TO PLAINTIFFS' WRITTEN QUESTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 31[1]

Deponent, Mel Martinez, hereby responds in writing under oath to the written questions propounded by the Plaintiffs under Federal Rule of Civil Procedure 31, as agreed to by the parties:

---

[1] On March 14, 2002, counsel for Orange County and Plaintiffs stipulated to the above named non-party responding to the propounded questions under oath for the convenience of the non-party, who presently serves as the Secretary of Housing and Urban Development for the United States. However, counsel for Orange County reserves the right to seek to exclude all or any portions of the responses hereto from admissibility at trial, pursuant to a Motion in Limine or under the Federal Rules of Evidence and/or Civil Procedure.

# Lieutenant Promotional Exam

| RANK ORDER | SSN | Name | Race | Sex |
|---|---|---|---|---|
| | | Lester, Thomas | W | M |
| | | Murphy, James | W | M |
| | | Bass, Michael | W | M |
| | | Barrett, Robert D. | W | M |
| 49 | | Sams, Douglas | W | M |
| | | Yanas, Nicholas | W | M |
| 42 | | Dickens, Jon M. | W | M |
| 38 | | Cyphers, Martin L., II | W | M |
| | | Graham, LaRon | B | M |
| 46 | | McCrystal, Darrel | W | M |
| | | Kallman, Clay | W | M |
| | | Seigler, Jeffery | W | M |
| 24 | | Reynolds, Richard | W | M |
| 43 | | Hollsten, Daniel | W | M |
| 23 | | Segrest, Rick | W | M |
| | | Warren, Kevin | W | M |
| | | Jackson, James | B | M |
| | | Leach, John | W | M |
| | | Hendy, Greg | W | M |
| 15 | | Moran, William | W | M |
| | | Washington, Joseph | B | M |
| 4 | | Mattox, William | W | M |
| | | Only, Thomas | B | M |
| | | Barboza, Scott | W | M |
| | | Carpenter, Miles | W | M |
| | | Eller, Michael | W | M |
| | | Marshall, Deborah | W | F |
| | | Hawkins, Terry | B | M |
| | | O'Neill, Michael | W | M |
| | | Wilkins, Alan | W | M |

# Lieutenant Promotional Exam

| RANK ORDER | SSN | Name | Race | Sex |
|---|---|---|---|---|
| 10 | ▓▓▓▓▓ | Stone, Lawrence | W | M |
|  | ▓▓▓▓▓ | Gainza, Jose, Jr. | H | M |
| 34 | ▓▓▓▓▓ | Stanley, William A., Jr. | W | M |
| 44 | ▓▓▓▓▓ | Arnold, Gregg | W | M |
|  | ▓▓▓▓▓ | Brooks, Alan | W | M |
| 26 | ▓▓▓▓▓ | Ratta, Mark | W | M |
| 32 | ▓▓▓▓▓ | Mills, Henry | W | M |
| 55 | ▓▓▓▓▓ | Beasley, Thomas | W | M |
|  | ▓▓▓▓▓ | Ruffing, Charles T. | W | M |
|  | ▓▓▓▓▓ | Hill, Dennis | B | M |
| 52 | ▓▓▓▓▓ | Hilliard, Lance | W | M |
|  | ▓▓▓▓▓ | Semple, William | W | M |
| 53 | ▓▓▓▓▓ | Wunderly, Tamara | W | F |
|  | ▓▓▓▓▓ | Luke, Albert R. | W | M |
| 29 | ▓▓▓▓▓ | Reineke, Robert | W | M |
|  | ▓▓▓▓▓ | Easter, Timothy | W | M |
|  | ▓▓▓▓▓ | McCrystal, Dana | W | M |
|  | ▓▓▓▓▓ | Schlicht, Mark | W | M |
|  | ▓▓▓▓▓ | Klein, Marc E. | W | M |
| 39 | ▓▓▓▓▓ | Ross, Michael | W | M |
|  | ▓▓▓▓▓ | Crossland, Brian | W | M |
|  | ▓▓▓▓▓ | Bruns, Harry E., Jr. | W | M |
| 11 | ▓▓▓▓▓ | Zielonka, Debra J. | W | F |
|  | ▓▓▓▓▓ | Silvestris, Joseph | W | M |
|  | ▓▓▓▓▓ | Tomaszewski, John | W | M |
|  | ▓▓▓▓▓ | Mullins, Paul | W | M |
| 33 | ▓▓▓▓▓ | Sabat, John | W | M |
|  | ▓▓▓▓▓ | Kennedy, Kevin | W | M |
|  | ▓▓▓▓▓ | Perry, Booker | B | M |
| 40 | ▓▓▓▓▓ | Taylor, Toby | W | M |

# Lieutenant Promotional Exam

| RANK ORDER | SSN | Name | Race | Sex |
|---|---|---|---|---|
| | | Wilcox, Robert | W | M |
| 59 | | Rullo, Thomas | W | M |
| | | Mills, Charles | W | M |
| | | Aquilon, Frank | H | M |
| 5 | | Woock, David | W | M |
| | | Byrne, John | W | M |
| | | Baquero, Juan | H | M |
| 6 | | Marzullo, Anthony | W | W |
| | | Ganley, Michael | W | M |
| 51 | | Ping, Thomas | W | M |
| | | Ianniello, Paul | W | M |
| | | Gass, Daniel | W | M |
| | | Thillet, Carlos | H | M |
| 28 | | Kasten, Kenneth | W | M |
| 56 | | Wood, Jeffrey | W | M |
| 20 | | Brown, Douglas | W | M |
| 1 | | Wajda, Michael | W | M |
| | | Plocki, Michael | W | M |
| 54 | | Morrow, Jay | W | M |
| | | Pines, Hal | B | M |
| | | Butler, James | W | M |
| 47 | | Peters, Douglas | W | M |
| 50 | | Barber, Karen | W | F |
| | | Proctor, Richard | W | M |
| | | Hill, Michael | W | M |
| 18 | | Behr, Jonathan | W | M |
| 60 | | Sturgeon, William | W | M |
| 35 | | Fussell, Lawerence, Jr. | W | M |
| 30 | | Provau, David | W | M |
| | | Cooper, Douglas | W | M |

# *Lieutenant Promotional Exam*

| RANK ORDER | SSN | Name | Race | Sex |
|---|---|---|---|---|
| | ■■■■■ | Burge, Bernard | W | M |
| | ■■■■■ | Cruz, Jose G. | H | M |
| 17 | ■■■■■ | Stanley, Gregg | W | M |
| 36 | ■■■■■ | Henderson, Kenneth | W | M |
| | ■■■■■ | Hickman, Susan | W | F |
| 13 | ■■■■■ | Lee, Robert | W | M |
| 45 | ■■■■■ | Kornbrust, John | W | M |
| 48 | ■■■■■ | Pirino, James | W | M |
| 57 | ■■■■■ | Darby, Terrance | B | M |
| | ■■■■■ | Dorris, Stephen | W | M |
| | ■■■■■ | Sosa, Charles | W | M |
| | ■■■■■ | McLean, Stacy | B | M |
| | ■■■■■ | Suarez, Robson | H | M |