
BOOKER PERRY, JAMES JACKSON,
STACY MCLEAN, TERRY HAWKINS,
ROBSON SUAREZ, AND JUAN BAQUERO,

  **Plaintiffs,**

vs.            CASE NO.: 6:01-CV-208-ORL-22JGG

ORANGE COUNTY, FLORIDA and ORANGE
COUNTY PROFESSIONAL FIRE FIGHTERS,
LOCAL 2057, INTERNATIONAL
ASSOCIATION OF FIRE FIGHTERS,

  **Defendants.**

_____/

## MOTION TO BIFURCATE TRIALS OF DISPARATE IMPACT AND DISPARATE TREATMENT CLAIMS
(with Supporting Memorandum of Law)

Defendant, Orange County, Florida, ("the County"), pursuant to Federal Rule of Civil Procedure 42(b), moves the Court to separate the trial of the Plaintiffs' claim of Disparate Impact against the County and the Orange County Professional Fire Fighters, Local 2057, International Association of Fire Fighters, ("the Union"), from the trial of the Plaintiffs' numerous Disparate Treatment and Retaliation claims against the Union.

### BACKGROUND

  1.  The Plaintiffs' Complaint concerns a 1999 Operations Lieutenant promotional process ("1999 Exam"), which the Plaintiffs claim violated the Civil Rights Act of 1870, 42 U.S.C. § 1981,

and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et al., as amended. See Complaint at ¶¶ 1, 23, 26.

2. Count I (the §1981 claim) and Count II (the Title VII claim-Disparate Treatment) allege the County and the Union intentionally discriminated against the Plaintiffs by subjecting them to disparate treatment because they are minorities. Count III (the Title VII claim-Disparate Impact) alleges unlawful disparate impact due to the 1999 Exam. Count IV (the Title VII claim-Retaliation) alleges that the Union unlawfully retaliated against the Plaintiffs for opposing an unlawful employment practice, including challenging the 1999 Exam.

3. In May 2002, pursuant to Fed. R. Civ. P. 41(a)(1), the Plaintiffs and the County filed a stipulation regarding the dismissal of Counts I and II against the County with prejudice. [Docket No. 69]. On June 25, 2002, the Court entered an Order dismissing these intentional discrimination claims against the County. [Docket No. 80]. As a result, only Count III (Disparate Impact) remains against the County.

4. On June 28, 2002, pursuant to Fed. R. Civ. P. 41(a)(1), the Plaintiffs and the County filed a Joint Stipulation dismissing all of Plaintiff James Jackson's claims against the County with prejudice. [Docket No. 82].

5. All Plaintiffs are still pursuing all claims against the Union.

6. This matter is scheduled for the September 3, 2002, Trial Term. A jury will be the fact finder for the claims against the Union. The Disparate Impact claim, however, will be tried as a bench trial, but the Plaintiffs have filed a motion seeking the use of an advisory jury for this claim. (Plaintiffs' Motion In Limine Requesting an Advisory Jury on Count III). The County opposes this motion.

7. There is a high probability of confusion and prejudice to the County if the disparate impact and disparate treatment issues are tried together before the same jury.[1] The evidence needed by Plaintiffs to prevail on their disparate impact claim against the County involves complex data, statistics, test methodologies, and expert testimony. The evidence needed by Plaintiffs to prevail on their disparate treatment claims involves emotionally charged, discrete incidents of adverse employment actions, racial animus, or hostility. If the trials are not separated, counsel for the County also will have to sit through the (more lengthy) disparate treatment evidence, thereby incurring substantial costs.

8. A separate trial devoted exclusively to disparate impact can be effectively tried by the Court -- with or without an advisory jury -- without interjecting the issue of disparate treatment. If, however, disparate treatment and retaliation claims are tried with disparate impact claims, testimony regarding disparate treatment and compensatory damages will dominate the sober facts relating to the mechanics of the 1999 Exam.

## MEMORANDUM OF LAW

I. **THE COURT SHOULD BIFURCATE THE TRIAL AND SEPARATE THE PLAINTIFFS' CLAIMS OF DISPARATE IMPACT AND DISPARATE TREATMENT TO AVOID CONFUSION BY THE JURY, TO AVOID UNFAIR PREJUDICE, AND TO PROMOTE CONVENIENCE AND JUDICIAL ECONOMY.**

Federal Rule of Civil Procedure 42(b) empowers a district court to order a separate trial on any claim, issue, or defense, when to do so would be "in furtherance of convenience or to avoid prejudice, or when separate trials would be conducive to expedition and economy." Fed.

---

[1] This assumes the jury is acting as the finder of fact for the disparate treatment claims <u>and</u> as an advisory jury for the disparate impact claim.

R. Civ. P. 42(b); Itel Capital Corp. v. Cups Coal Co., Inc., 707 F.2d 1253, 1260 (11th Cir. 1983). The decision whether to order separate trials is left to the sound discretion of the trial court. See Harrington v. Cleburne County Bd. of Educ., 251 F.3d 935 (11th Cir. 2001) ("separate trials of claims based on distinct grounds of discrimination, was within the court's discretion"); Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc., 837 F. Supp. 686, 689 (N.D. Ill. 1994).

In deciding whether a separate trial is appropriate, the Court may consider a variety of factors, including whether the issues to be tried are significantly different, whether separation of the issues will be conducive to expedition and economy, and whether prejudice will be avoided by separate trials.[2] See Beauchamp v. Russell, 547 F. Supp. 1191, 1199 (N.D. Ga. 1982); see also Martin v. Bell Helicopter Co., 85 F.R.D. 654, 657-58 (D. Colo. 1980). In this case, a consideration of these factors clearly indicates that separate trials on disparate impact and disparate treatment are warranted.

### A. The Court Should Separate The Disparate Impact And Disparate Treatment Claims To Avoid Confusion By The Jury And To Avoid Prejudice Affecting The County.

Bifurcation is critically needed because the Plaintiffs' allegations of intentional discrimination and emotional harm risk overwhelming the jury or suggesting an improper basis on which to find the County liable for disparate impact. Courts have separated trials of different claims and different defendants in similar situations. See, e.g., Harrington, 251 F.3d at 938

---

[2] "Only one of these criteria need be met to justify bifurcation." Brom, 837 F. Supp. at 689; see also Harrington, 251 F.3d at 938 (affirming bifurcation order "in furtherance of convenience").

(affirming district court order separating "trials of claims based on distinct grounds of discrimination"); Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999) (in §1983 excessive force case, affirming district court order separating trials of the individual defendants and the city because the plaintiff intended to introduce evidence against the city that would have been inadmissible as to the individuals or prejudicial to them); Martin, 85 F.R.D. at 657 (ordering separate jury trials for plaintiffs suing under Colorado law and for plaintiffs suing under California law).

Of particular importance when determining whether separate trials are appropriate is that all parties receive a fair and impartial trial. See Beauchamp, 547 F. Supp. at 1199; Martin, 85 F.R.D. at 658. Where evidence related to damages and the plaintiffs' alleged injuries may confuse the jury, separate trials are appropriate. See Brom, 867 F. Supp. at 690; Buscemi v. PepsiCo, Inc., 736 F. Supp. 1267, 1272 (S.D.N.Y. 1990) ("Evidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault.").

In this case, the Plaintiffs have alleged that the Union intentionally discriminated and retaliated against the Plaintiffs by, inter alia, aiding non-minorities with answers to the 1999 Exam, failing to assist the Plaintiffs in a grievance process or arbitration process, failing to admit Plaintiff Perry to the Union, and subjecting the Plaintiffs to an ongoing pattern and pervasive practice of racial discrimination that created a hostile work environment. None of these issues is pertinent to the disparate impact claim against the County.

Disparate treatment claims, since the Civil Rights Act of 1991, allow plaintiffs to seek legal remedies, such as compensatory and punitive damages. Additionally, plaintiffs must

demonstrate: 1) they are a member of a protected class; 2) they suffered an adverse employment action; 3) the employer treated similarly-situated employees outside of the protected class more favorably; and 4) plaintiffs were qualified to perform the job. See generally Crapp v. City of Miami Beach, 242 F.3d 1017, 1020 (11th Cir. 2001).

In stark contrast, the Plaintiffs' sole claim against the County is an equitable claim attacking the form and administration of the 1999 Exam. Intentional discrimination is not an element of a disparate impact claim. See Nash v. Consolidated City of Jacksonville, 895 F. Supp. 1536, 1541 (M.D. Fla. 1995). "A disparate impact theory is much different from a disparate treatment theory in that it does not require a showing of animus on the employer's part." Id. In essence, the Plaintiffs allege that the 1999 Exam is "facially neutral in [its] treatment of different groups, but in fact fall[s] more harshly on one group than another." Id. at 1540. Competing experts and detailed psychometric analyses are commonly used in disparate impact litigation, as in this case, and the focus is on "statistical disparities and on the various explanations for the disparities." Id. at 1541. The County's defense, moreover, will focus on the job-relatedness of the test and not on refuting evidence of discriminatory animus or motive.

Clearly, Plaintiffs have lodged a barrage of intentional discrimination claims against the Union, all of which are volatile, emotionally charged, and potentially inflammatory. The jury will likely find the issues difficult to separate between the Defendants, and the task of discerning which Defendant may be liable for what count may confuse the jury and prejudice the County.

Moreover, Plaintiffs' testimony regarding compensatory damages, such as emotional distress, will exacerbate the jury's difficulty in rendering a fair and impartial verdict. The jury may base its advisory verdict regarding disparate impact on sympathy for the Plaintiffs or animosity toward the

Union, rather than statistical or substantive evidence.[3] Accordingly, the Court should separate the disparate impact and disparate treatment trials to avoid confusion and unfair prejudice.

### B. The Court Should Order Separate Trials In This Action To Advance Judicial Economy And Convenience For The Parties.

A separate trial for the disparate impact claim and the disparate treatment claims will promote efficient judicial administration and economy, and will not impede the expeditious resolution of the litigation. Assuming the Court does not allow an advisory jury, the parties have agreed that the separate bench trial on the disparate impact claim would last, at most, three days. No evidence regarding intentional discrimination, compensatory damages, or racial animus would be relevant.

If the trials are not separated, judicial economy and expedition will not be served. It is unknown how long the consolidated trial would last. Moreover, if there is an advisory jury also sitting as the finder of fact for the disparate treatment claims, the County will object to inadmissable and prejudicial evidence, and the Court will likely have to instruct consistently the panel to disregard evidence as it relates to County.

Similarly, if the Court does not allow an advisory jury, the Court will sit as the trier of fact for the disparate impact claims and will have to sort through the extraneous evidence

---

[3] The jury also may confuse Plaintiff Jackson's role in the litigation. Plaintiff Jackson has dismissed his claims against the County, but his claims are still pending against the Union. It is probable that Plaintiff Jackson would testify or other evidence about him would be introduced. Such information would be inadmissible against the County and would prejudice the County.

introduced for the disparate treatment claims.[4] And the jury for the disparate treatment claims would have to sort through details of the testing process and test methodologies and theories to determine what is relevant to the claims against the Union, the only relevant Defendant for their consideration. The increased time and effort required for these scenarios does not comport with Rule 42(b)'s goals of efficient and expedient trials. Accordingly, the Court should separate the disparate impact and disparate treatment trials.[5]

## CONCLUSION

The Court should grant this Motion and bifurcate the Plaintiffs' claim of disparate impact against the County and the Union from the Plaintiffs' disparate treatment claims against the Union.

---

[4] The County does not imply that the Court would be incapable of mastering this task or that the Court would be unduly influenced by emotional testimony.

[5] Having the County's counsel attend the consolidated trial, which will last far longer than the anticipated three days for the disparate impact case, is also very prejudicial to the County because it will incur significant additional attorneys' fees and costs for its lawyers sitting through the entire disparate treatment case.

## CERTIFICATE OF COUNSEL

Pursuant to Local Rule 3.01(g), counsel for the County certifies that he has discussed the matters raised by this Motion to Bifurcate with counsel for the other parties in a good faith attempt to resolve these matters. Despite these efforts, counsel have been unable to reach a resolution.

Respectfully submitted,

_____
Kevin W. Shaughnessy, Esq.
Florida Bar No.: 0473448
Rexford H. Stephens, Esq.
Florida Bar No.: 0150916
AKERMAN, SENTERFITT & EIDSON, P.A.
Post Office Box 231
Orlando, Florida 32802-0231
Telephone: (407) 843-7860

Attorneys for Orange County, Florida

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a correct copy of the foregoing document has been served by facsimile and regular U.S. Mail this 26th day of July, 2002, upon THOMAS J. PILACEK, ESQ., Law Offices of Thomas J. Pilacek, 5844 Red Bug Lake Road, Winter Springs, Florida 32708 and JOSEPH J. EGAN, JR., ESQUIRE, Egan, Lev and Siwica, Post Office Box 2231, Orlando, Florida 32802-2231.

_____
Rexford H. Stephens